265 P.2d 381

## SUMMIT RANGE & LIVESTOCK CO.

v.

## REES.

No. 8063.

Supreme Court of Utah.

Dec. 22, 1953.

Gustin, Richards & Mattsson, James W. Beless, Jr., Salt Lake City, for appellant.

John S. Boyden, Bryant H. Croft, Salt Lake City, for respondent.

CROCKETT, Justice.

Range war in the time honored tradition of the West, arising out of rivalry between cattle and sheep men, forms the basis of this suit. Fortunately, badmen, shooting irons and combat have been supplanted by a corporate charter, by-laws, directors' meetings and resort to the orderly processes of law.

The historical background initiates with the organization of the plaintiff corporation in 1900. Its articles provided:

"The object, business and pursuits of this corporation shall be to buy, hold, own, *occupy* and sell *real estate,* and lease for range or grazing purposes, real estate, and *to raise and deal in livestock,* * * * provided that no land shall be leased from the company upon which to graze sheep, whether on lands now owned by the company, described as * * * [describing lands] * * * or any lands to which title may hereafter be acquired." (Italics ours.)

The company owned approximately 4,500 acres of grazing land; the method of operation was that stockholders were allowed to graze their livestock upon the company land in proportion to the shares they

owned. Over a period of years, those interested gradually went through a transition from cattle to sheep business. In 1925, the articles were amended to delete the restriction against grazing sheep, and by 1952, all of the stockholders were grazing sheep except defendant Rees, who owned 910½ of the 6,000 shares and who was still grazing cattle.

The plaintiff's Board of Directors on March 4, 1952, following proper procedure, adopted by-laws providing that the board should designate sheep and cattle grazing areas separate from each other, and that each owner should be responsible for keeping his stock within such areas.

It is Mr. Rees' position that this action was aimed at him as the only cattle grazer; that the number of cattle he has would not justify the expense of either fencing or hiring herders to keep them within the limited area, as a result of which his right to the proportional use of the range is, for practical purposes, destroyed. As a consequence of this, he argues, the action of the directors is unfairly discriminatory against him and confiscatory of his property rights, rendering such by-laws invalid. Accordingly, he refused to be bound by them, and the corporation brought this action to enjoin him from their violation. This appeal is from a judgment declaring such by-laws valid and directing him to comply therewith.

■ It is the function and the prerogative of the Board of Directors of the corporation to manage its affairs in the best interests of the corporation and its stockholders. Its action in so doing will not be interfered with so long as it is within the framework of the purposes and powers included in the corporate charter, and the action is not fraudulent or so discriminatory as to be confiscatory of the rights of the defendant, who is a minority stockholder.[1]

■ The regulations referred to reflect the judgment of the directors that because of facts immaterial to delineate here, but known to stockmen, cattle and sheep cannot be grazed to the best advantage on the same land; and, therefore, the separation of grazing areas is the most efficient way to use the range in the interest of the greatest number of shares of stock in the corporation. The defendant is allowed his proportional use of the range, but is required to use it so as not to impair the use for others.

Defendant calls attention on this appeal to the fact that the purpose of the corporation, as he interprets the articles, was not to hold land for grazing their animals on a cooperative basis, as has been done, but rather contends that it was to lease land to others. He cites our State Constitution:[2] "No corporation shall engage in any business other than that expressly authorized in its charter, * * *" and our statute

1. 13 Fletcher Cyclopedia Corporations (Perm.Ed.) Sec. 5813.

2. Constitution of the State of Utah, Article 12, Sec. 10.

198

law:[3] " * * * the original purpose of the corporation shall not be altered or changed without the approval and consent of all of the outstanding stock * * *" suggesting that the by-laws referred to altered the original purpose of the corporation without the consent of the defendant and the other stockholders.

■■ Reference to the language of the charter quoted in the forepart of this opinion indicates that although the purposes of the corporation included the selling and leasing of real estate, the words, " * * * to * * * occupy * * * real estate, and to raise and deal in livestock, * * *" seem broad enough to permit the holding of property for the grazing of livestock of the members in proportion to their interests. It is undisputed that such has been the practice from the inception of the corporation, and the defendant agreed to it until this controversy arose. Such interpretation and operation under the corporate charter represents no such distortion of the corporate purposes as to fall outside the objectives expressed in the articles of incorporation, notwithstanding the general rule that the corporate powers as outlined in the charter are subject to strict interpretation.[4] Moreover, even if the defendant were correct in this contention, it would afford him no relief from the difficulty in which he finds himself, but would simply compel the corporation to readjust its method of operation.

■ A further attack upon the by-laws, which is not germane to the present controversy, nor the difficulties confronting defendant, was included for adjudication in this suit by stipulation of the parties. It concerns the validity of another by-law giving the corporation or its stockholders a first refusal option to buy stock which is for sale. The limitation upon the power of a corporation to purchase its own stock is expressly dealt with by statute [5] enacted prior to the adoption of such by-law:

"A corporation may purchase or redeem one or more shares of any and all classes of its own capital stock in any of the following cases:

* * * * * *

"(f) In any case where the use of the funds or property of a corporation for such purchase or redemption would not cause the impairment of that portion of its assets acquired as consideration for its shares or that portion which has been treated as payment for shares allotted as stock dividends."

Defendant has made no showing of any proposal to purchase stock, and there is, of course, nothing before us as to the possibility of impairment of assets of the corporation by any such purchase. It is also

3. Sec. 16–2–45, U.C.A.1953.

4. Zion's Savings Bank & Trust Co. v. Tropic & East Fork Irr. Co., 102 Utah 101, 126 P.2d 1053.

5. S.L.U.1951, Ch. 23, Sec. 2, now Sec. 16–2–16, U.C.A.1953.

to be noted that the by-law in question provides that it shall not be binding upon any stockholder unless he surrenders his certificate for the purpose of having the restriction stamped upon it. The defendant has not done so, and will not be adversely affected by such provision unless and until he so agrees.

We are in accord with the conclusion of the trial court that the by-laws are not ultra vires, unlawful, or so discriminatory as to be invalid.

Judgment affirmed. Costs to respondent.

WOLFE, C. J., and McDONOUGH, HENRIOD and WADE, JJ., concur.